**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROMAN A. URBANIAK, | ) | |
| on behalf of plaintiff and the class defined | ) | |
| herein, | ) | |
| | ) | |
| Plaintiff, | ) | 07 C 6326 |
| | ) | Judge Grady |
| vs. | ) | Magistrate Judge Nolan |
| | ) | |
| CREDIGY RECEIVABLES, INC.; | ) | |
| CREDIGY SERVICES CORP.; and | ) | |
| STEWART & ASSOCIATES, P.C., | ) | |
| ATTORNEYS AT LAW, A PROFESSIONAL | ) | |
| CORPORATION; | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff has requested that this Court enter an order determining that this Fair Debt

Collection Practices Act ("FDCPA") action may proceed as a class action against defendants

Credigy Receivables, Inc.; Credigy Services Corp.; and Stewart & Associates, P.C., Attorneys at

Law, a Professional Corporation. This memorandum is submitted in support of that motion.

**I.     NATURE OF THE CASE**

This case arises out of defendants' practice of collecting or attempting to collect

time-barred debts.  On or about May 23, 2007, defendants sent plaintiff a collection letter seeking

to collect on a credit card debt that had allegedly been charged-off on some date substantially prior

to April 23, 2001. The letter expressly states "we have been authorized by our clients to refer this

matter to any attorney for the filing of a lawsuit against you." The debt described in the letter is not

based on a written contract and is thus subject to the five year Illinois statute of limitations.  735

1

ILCS 5/13-203.

Plaintiff contends that the collection or attempted collection of a time-barred debt violates 15 U.S.C. §§1692e, e(2), e(5), e(10), and § 1692(f) of the FDCPA. Kimber v. Federal Financial Corp., 668 F.Supp. 1480 (M.D.Ala. 1987).

Section 1692e provides:

**§ 1692e.     False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)     The false representation of--**

**(A)     the character, amount, or legal status of any debt; or**

**(5)     The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10)     The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

Section 1692f provides:

**§ 1692f.     Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1)     The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .**

## II.     THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection

2

practices by debt collectors".    15 U.S.C. §1692(e).  It is designed to protect consumers from

unscrupulous collectors, whether or not there is a valid debt.  Mace v. Van Ru Credit Corp., 109

F.3d 338 (7th Cir. 1997); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998); Baker v. G.C.

Services Corp., 677 F.2d 775, 777 (9th Cir. 1982); McCartney v. First City Bank, 970 F.2d 45, 47

(5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods;

conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading

statements, in connection with the collection of a debt; it also requires debt collectors to give debtors

certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

   In enacting the FDCPA, Congress recognized the  --

> **universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . .  [T]he vast majority of consumers who obtain credit fully intend to repay their debts.  When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

   The Seventh Circuit has held that whether a debt collector's conduct violates the

FDCPA should be judged from the standpoint of an "unsophisticated consumer."  Avila v. Rubin,

84 F.3d 222 (7th Cir. 1996); Gammon v. GC Services, LP, 27 F.3d 1254 (7th Cir. 1994).  The

standard is an objective one  --  whether the plaintiff or any class member was misled is not an

element of a cause of action.  "The question is not whether these plaintiffs were deceived or misled,

but rather whether an unsophisticated consumer would have been misled."  Beattie v. D.M.

Collections, Inc., 754 F.Supp. 383, 392 (D.Del. 1991).

   Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq.,

the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes.  Cirkot

v. Diversified Fin. Services, Inc., 839 F.Supp. 941 (D. Conn. 1993).

> **The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.**

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages.  Bartlett v. Heibl, 128 F.3d 497, 499  (7th Cir.1997); Baker, 677 F.2d at 780-1; Woolfolk v. Van Ru Credit Corp., 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); Cacace v. Lucas, 775 F. Supp. 502 (D. Conn. 1990); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 177 (W.D.N.Y. 1988); Kuhn v. Account Control Technol., 865 F. Supp. 1443, 1450 (D.Nev. 1994); In re Scrimpsher, 17 B.R. 999, 1016-7 (Bankr.N.D.N.Y. 1982); In re Littles, 90 B.R. 669, 680 (Bankr. E.D.Pa. 1988), aff'd as modified sub nom. Crossley v. Lieberman, 90 B.R. 682 (E.D.Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein.  Crabill v. Trans Union, L.L.C., 259 F.3d 662, 666  (7th Cir. 2001);  Baker, 677 F.2d at 780; Whatley v. Universal Collection Bureau, 525 F. Supp. 1204, 1206 (N.D.Ga. 1981).  "Congress intended the Act to be enforced primarily by consumers . . . ." FTC v. Shaffner, 626 F.2d 32, 35 (7th Cir. 1980).  "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ." Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case.  The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary

judgment for the plaintiff." Cacace v. Lucas, 775 F. Supp. at 505.   Accord, Turner v. J.V.D.B. &

Associates, Inc., 330 F.3d 991, 995  (7th Cir. 2003); Gearing v. Check Brokerage Corp., 233 F.3d

469, 472 (7th Cir.2000).

## III.    STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers.  As the court stated

in Eshaghi v. Hanley Dawson Cadillac Co., 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> **In a large and impersonal society, class actions are often the last barricade of
> consumer protection.  . . . To consumerists, the consumer class action is an
> inviting procedural device to cope with frauds causing small damages to large
> groups.  The slight loss to the individual, when aggregated in the coffers of the
> wrongdoer, results in gains which are both handsome and tempting.  The
> alternatives to the class action  -- private suits or governmental actions -- have
> been so often found wanting in controlling consumer frauds that not even the
> ardent critics of class actions seriously contend that they are truly effective. The
> consumer class action, when brought by those who have no other avenue of legal
> redress, provides restitution to the injured, and deterrence of the wrongdoer.**
> (574 N.E.2d at 764, 766)

Congress expressly recognized the propriety of a class action under the FDCPA by

providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class

action cases.  As a result, numerous FDCPA class actions have been certified.  Shea v. Codilis, 99

C 57, 2000 WL 336537, 2000 U.S. Dist. LEXIS 4131 (N.D. Ill. Mar. 27, 2000); Roe v. Publishers

Clearing House, 98 C 330, 1999 WL 966977, 1999 U.S. Dist. LEXIS 16249 (N.D. Ill. Sept. 30,

1999); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Nielsen v. Dickerson, 98 C 5909, 1999 WL

350694, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. May 19, 1999); Sledge v. Sands,182 F.R.D. 255

(N.D. Ill. 1998); Shaver v. Trauner, C.A. 97-1309, 1998 U.S. Dist. LEXIS 19648 (C.D. Ill. July 31,

1998); Davis v. Suran, 98 C 656, 1998 WL 474105, 1998 U.S. Dist. LEXIS 12233 (N.D. Ill. July

31, 1998); Francisco v. Doctors & Merchants Credit Service, Inc., 98 C 716, 1998 WL 474107, 1998

U.S. Dist. LEXIS 12234 (N.D. Ill., July 29, 1998); Keele v. Wexler & Wexler, 95 C 3483, 1996 WL

124452,  1996 U.S. Dist. LEXIS 3253 (N.D. Ill., March 18, 1996), <u>aff'd</u>, 149 F.3d 589 (7th Cir. 1998); <u>Wells v. McDonough</u>, 97 C 3288, 1998 WL 160876, 1998 U.S. Dist. LEXIS 4441 (N.D. Ill. Mar. 23, 1998); <u>Miller v. Wexler & Wexler</u>, 97 C 6593, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill. Feb. 5, 1998); <u>Wilborn v. Dun & Bradstreet</u>, 180 F.R.D. 347  (N.D. Ill. 1998); <u>Arango v. GC Services LP</u>, 97 C 7912, 1998 WL 325257, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. 1998) (misleading collection letters); <u>Avila v Van Ru Credit Corp.</u>,94 C 3234, 1995 WL 683775, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), <u>aff'd</u>, <u>Avila v. Rubin</u>, <u>supra</u>, 84 F.3d 222; <u>Carr v. Trans Union Corp.</u>, C.A. 94-22, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); <u>Colbert v. Trans Union Corp.</u>, C.A. 93-6106, 1995 WL 20821, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. 1995) (same); <u>Gammon v. GC Services, L.P.</u>, 162 F.R.D. 313 (N.D. Ill. 1995) (similar); <u>Zanni v. Lippold</u>, 119 F.R.D. 32, 35 (C.D. Ill. 1988); <u>West v. Costen</u>, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class certified regarding alleged failure to provide required "validation" notices and addition of unauthorized fees); <u>Cheqnet Systems, Inc. v. Montgomery</u>, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); <u>Brewer v. Friedman</u>, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); <u>Duran v. Credit Bureau of Yuma, Inc.</u>, 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

## IV.    THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

### A.    Rule 23(a)(1)  --  Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive . . . ." <u>Riordan</u>,

113 F.R.D. at 62.   Where the class numbers at least 40, joinder is generally considered impracticable.  <u>Cypress v. Newport News General & Nonsectarian Hosp. Ass'n</u>, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); <u>Swanson v. American Consumer Industries</u>, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); <u>Riordan</u>, 113 F.R.D. 60 (10-29 sufficient); <u>Philadelphia Electric Co. v. Anaconda American Brass Co.</u>, 43 F.R.D. 452, 463 (E.D.Pa. 1968) (25 sufficient); <u>Sala v. National R. Pass. Corp.</u>, 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50 sufficient); <u>Scholes v. Stone, McGuire & Benjamin</u>, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70).  It is not necessary that the precise number of class members be known.  "A class action may proceed upon estimates as to the size of the proposed class."  <u>In re Alcoholic Beverages Litigation</u>, 95 F.R.D. 321 (E.D.N.Y. 1982); <u>Lewis v. Gross</u>, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986).

The court may "make common sense assumptions in order to find support for numerosity."  <u>Evans v. United States Pipe & Foundry</u>, 696 F.2d 925, 930 (11th Cir. 1983).  "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable."  2 <u>Newberg on Class Actions</u> (3d ed. 1992), §7.22.A.

Here, for the reasons stated in plaintiff's motion, the number of class members exceeds the minimum necessary and the requirements of Rule 23(a)(1) have been met.

**B.     Rules 23(a)(2) and 23(b)(3) – Predominance of common questions of law or fact**

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law *or* fact.  Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

These requirements are normally satisfied when there is an essential common factual link between all class members and the defendants for which the law provides a remedy. Halverson v. Convenient Food Mart, Inc., 69 F.R.D. 331, 334 (N.D.Ill. 1974). Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D.Ill. 1984); accord, Patrykus v. Gomilla, 121 F.R.D. 357, 361 (N.D.Ill. 1988); Carroll v. United Compucred Collections, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *43-44 (M.D.Tenn.  Nov. 15, 2002), adopted in pertinent part, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn.,  Mar. 31, 2003), aff'd, 399 F.3d 620 (6th Cir. 2005); Wahl v. Midland Credit Mgmt., 06 C 1708, 2007 U.S. Dist. LEXIS 39626, *14-15 (N.D.Ill., May 30, 2007); Smith v. Nike Retail Services, Inc., 234 F.R.D. 648, 659 (N.D.Ill. 2006).  The authorities hold that cases dealing with the legality of standardized documents or conduct are  generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis.  Halverson, supra, 69 F.R.D. at 334-336; Haroco v. American Nat'l Bank, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (improper computation of interest); Kleiner v. First Nat'l Bank, 97 F.R.D. 683, 692 (N.D.Ga. 1983) (same); Heastie v. Community Bank, 125 F.R.D. 669, 675 (N.D.Ill. 1989)  (execution of home improvement financing documents in sequence that evaded consumers' rescission rights);  Carroll v. United Compucred Collections, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *47-48 (M.D.Tenn.  Nov. 15, 2002) (collection practices).

In this case, the "common nucleus of operative fact," Halverson, 69 F.R.D. at 335, is that defendants sent a letter seeking to collect on  time-barred debts. This conduct gives rise to the predominant common question of whether defendants' practice violates the FDCPA.

The only individual issue is the identification of the class members, a ministerial

8

issue readily answered from defendants' records. Questions readily answerable from defendant's files do not present an obstacle to class certification. Heastie v. Community Bank, 125 F.R.D. 669 (N.D.Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").  In any event, the Seventh Circuit has held that the need for "separate proceedings of some character . . . to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004).  "Once that question is answered, if it is answered in favor of the class, a global settlement . . . will be a natural and appropriate sequel.  And if there is no settlement, that won't be the end of the world.  Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues.  Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." Id.

### C.     Rule 23(a)(3) -- Typicality

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> **A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.  The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members.  Thus, similarity of legal theory may**

9

**control even in the face of differences of fact.**

De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been sent a letter by defendants just as plaintiff was. Plaintiff's claim and the claims of the class members all turn on the legality of defendants' practice of collecting on time-barred debts.

**D.     Rule 23(a)(4) -- Adequacy of representation**

The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); In re Alcoholic Beverages Litigation, 95 F.R.D. 321.

Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by Appendix D, which sets forth counsel's qualifications and resources.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. Here, both plaintiff and the class members seek money damages as the result of defendant's unlawful collection practices. Given the identity of claims between plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiff and those of the class.

E.    **Rule 23(b)(3)  --  Class action is superior to other
available methods of resolving this controversy**

Efficiency is the primary focus in determining whether the class action is the superior

method for resolving the controversy presented.  Eovaldi v. First Nat'l Bank, 57 F.R.D. 545 (N.D.

Ill. 1972).  The Court is required to determine the best available method for resolving the

controversy in keeping with judicial integrity, convenience, and economy.  Scholes, 143 F.R.D. at

189; Hurwitz v. R.B. Jones Corp., 76 F.R.D. 149 (W.D.Mo. 1977).  It is proper for a court, in

deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to

enforce their rights, and the improbability that large numbers of class members would possess the

initiative to litigate individually."  Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1165 (7th

Cir. 1974).

In this case there is no better method available for the adjudication of the claims

which might be brought by each individual debtor.  The vast majority of debtors are undoubtedly

unaware that their rights are being violated.  In addition, persons from whom defendant is attempting

to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel

to protect their rights on an individual basis.

The special efficacy of the consumer class action has been noted by the courts and

is applicable to this case:

> **A class action permits a large group of claimants to have their claims
> adjudicated in a single lawsuit.  This is particularly important where, as here,
> a large number of small and medium sized claimants may be involved.  In light
> of the awesome costs of discovery and trial, many of them would not be able to
> secure relief if class certification were denied . . . .**

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action.  As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis.  These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.'  7B Wright et al., §1778, at 59; see e.g., <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.')  The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

<u>Lake v. First Nationwide Bank</u>, 156 F.R.D. 615, 628-629 (E.D.Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy.  <u>Zanni</u>, 119 F.R.D. 32.

## V.     <u>CONCLUSION</u>

The proposed class meets the requirements of Rules 23(a) and (b)(3).  Plaintiff respectfully requests that this Court certify this action as a class action.

Respectfully submitted,

<u>s/Daniel A. Edelman</u>
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michelle R. Teggelaar
Francis R. Greene
EDELMAN, COMBS, LATTURNER
      & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel A. Edelman, certify that on February 6, 2008, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent via electronic mail to all counsel of record by operation of the Court's electronic filing system.

David Schultz
dschultz@hinshawlaw.com

Peter E. Pederson
ppederson@hinshawlaw.com

<u>s/Daniel A. Edelman</u>
Daniel A. Edelman